UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| FREELANCER INTERNATIONAL PTY LIMITED, et al.,<br><br>Plaintiffs,<br><br>v.<br><br>UPWORK GLOBAL, INC., et al.,<br><br>Defendants. | Case No. 20-cv-06132-SI<br><br>**ORDER DENYING PLAINTIFFS' MOTION FOR A PRELIMINARY INJUNCTION AND GRANTING EXTENSION OF TIME TO ANSWER**<br><br>Re: Dkt. Nos. 7, 43, 45, 51, 52 |

On October 16, 2020, the Court held a hearing on plaintiffs' motion for a preliminary injunction. Having considered the papers submitted and the arguments made, the Court hereby DENIES plaintiffs' motion for a preliminary injunction.

**BACKGROUND**

On August 31, 2020, plaintiffs Freelancer Technology Pty Limited ("Freelancer Tech") and Freelancer International Pty Limited ("Freelancer Intl") (collectively "plaintiffs" or "Freelancer") filed the instant action as well as a motion for a temporary restraining order ("TRO") and a preliminary injunction. Dkt. Nos. 1 (Compl.) and 7 (Mot.). The complaint alleges ten causes of action[1] against defendants Upwork Inc. and Upwork Global Inc. (collectively "defendants" or "Upwork"). Dkt. No. 1 (Compl.). The Court denied plaintiffs' motion for a TRO and granted in part and denied in part plaintiffs' request for expedited discovery. Dkt. No. 29 (Order).

---

[1] The ten causes of action are: (1) Counterfeiting; (2) Federal Trademark Infringement; (3) Federal Unfair Competition; (4) California Unfair Competition; (5) Common Law Unfair Competition; (6) Common Law Trademark Infringement; (7) Common Law Trade Name Infringement; (8) Tortious Interference with Prospective Economic Advantage; (9) California Anti-Phishing Act; and (10) California False Advertising.

1  Plaintiffs and defendants are competitors – both offer software platforms matching freelancers with freelancing jobs. Dkt. No. 1 ¶¶ 45, 50. Freelancer Limited, which wholly owns plaintiffs, was founded in 2009. Dkt. No. 1 ¶¶ 1-2. Plaintiffs "have almost 47 million registered users, of which 9.1 million were added in 2019" and their "mobile applications have been downloaded over 5.4 million times, including over 1.6 million downloads in the 2019 fiscal year." Dkt. No. 1 ¶¶ 4, 12.

Since 2013, plaintiff Freelancer Tech has held the federally registered trademark[2] to the word mark "FREELANCER" for the goods and services provided under Classes 9, 35, 36, and 45. Dkt. No. 1 ¶¶ 24, 26, 29-32; Dkt. No. 1-1 (Ex. 1) ("FREELANCER" registration certificate). The Classes from plaintiffs' Principal Register registration are reproduced below:

> Class 9: "For: downloadable computer software for use in website authoring, downloading, transmitting, receiving, editing, extracting, encoding, decoding, playing, storing and organizing text, data, images, audio files, and video files; **computer software for personal information management; computer software for use in recording, organizing, transmitting, manipulating, and reviewing text, data, audio files, and video files in connection with computers, television set-top boxes, music players, video players, media players, cellular phones, and portable and handheld digital electronic devices; computer software for accessing, browsing and searching online databases**; computer software to enable users to program and distribute audio, video, text and other multimedia content, including music, concerts, videos, radio, television, news, sports, cultural events, and entertainment-related and educational programs via communications networks; **computer software for identifying, locating, grouping, distributing, and managing data and links between computer servers and users connected to electronic communications networks**"
>
> Class 35: "For: online retail store services featuring computer software"
>
> Class 36: "For: **electronic payment services, namely, processing electronic funds transfer, credit card, debit card, electronic check and electronic payments via an electronic communications network; electronic funds transfer services; online escrow service for payment of services**"
>
> Class 45: "For: **dispute resolution services; identification verification services, namely, providing authentication of personal identification information; online social networking services**"

Dkt. No. 7 at 10-11[3] (emphasis in original); *see* Dkt. No. 1-1 (Ex. 1).

---

[2] U.S. Reg. No. 4,284,314 issued on February 5, 2013, from U.S. Trademark Application Serial No. 77/983,284 (filed March 3, 2010).

[3] For ease of reference, citations to page numbers refer to the ECF branded numbers in the upper right corner of the page.

The mark, which received incontestable status in 2018, consists of standard characters without claim to any particular font, style, size, or color. Dkt. No. 1-1 (Ex. 1); Dkt. No. 1-2 (Ex. 2). However, plaintiff Freelancer Tech was refused registration on the Principal Register for the following areas because the United States Patent and Trademark Office (USPTO) determined the word mark "FREELANCER" is merely descriptive as applied to the following goods and services:

> Applicant has applied to register the mark FREELANCER for use in conjunction with "online business directories in the field of employment; **providing a website allowing users to post messages offering or seeking job opportunities**; providing online project management services for others for business purposes in the field of scheduling, accounting, business project management and business development, providing an on-line searchable database featuring classified ad listings and employment opportunities", "Providing on-line electronic bulletin boards for transmission of messages among computer users concerning job opportunities", and "Computer services, namely, creating an on-line community for registered users to participate in discussions, get feedback from their peers, form virtual communities, and engage in business networking; computer services, **namely, providing a web-based system and online portal featuring on-line non-downloadable software that enables users to access recruitment, project management, dispute resolution, employment, employment directory, business directory, and job posting resources** application service provider featuring application programming interface (API) software for use in building software applications for advertising, project management, user feedback and employment services; Computer services, namely, designing and implementing on demand web sites in the nature of turnkey packages allowing customers to create ecommerce web sites for the purpose of uploading photos and creating gifts; Testing, analysis and evaluation of the goods and services of others for the purpose of certification; creating an on-line community for registered users to evaluate the reputation, reliability, and integrity of individual services providers and customers, showcase their skills, get feedback from their peers, form virtual communities, engage in social networking and improve their talent; design, creation, hosting, maintenance of websites for others".

Dkt. No. 38-2 (Ex. 1 Office Action) (emphasis added).[4]

Defendants own the federally registered trademark "UPWORK." Dkt. No. 38 at 11 (Oppo.). Defendants provide two UPWORK-branded mobile applications as shown below in both the Apple App Store (top) and the Google Play Store (bottom):

---

[4] Plaintiffs move to strike paragraphs 2-6, 11, 15, and 17-25 and Exhibits 1-2, 6, 10, and 12-16 of Dkt. No. 38-1 (Caldera Decl. in Support of Defs.' Oppo.), which discusses and attaches Dkt. No. 38-2 Exhibit 1, the USPTO Office action for plaintiff Freelancer Tech's trademark application. Plaintiffs argue Ms. Caldera's declaration inappropriately offers factual evidence, making Ms. Caldera a fact witness. Dkt No. 43 at 3. The Court agrees with plaintiffs in part. Paragraphs 11, 15, and 17-25 are hereby struck from the declaration as improper. The Court denies plaintiffs' motion to strike with respect to paragraphs 2-6 and Exhibits 1 and 2. Plaintiffs' request to have Ms. Caldera removed from the matter as an attorney is denied. California Rule of Professional Conduct 3.7 (Lawyer as Witness). It is proper and indeed routine for counsel to provide documents like Exhibit 1 and Exhibit 2 to the Court.

Dkt. No. 38 at 11; Dkt. No. 38-2 (Exs. 5, 9).

According to defendants, one app is meant for use by clients, titled "Upwork for Clients," while the other app is meant for use by freelancers, titled "Upwork for Freelancers." Dkt. No. 38 at 14; Dkt. No. 38-3 ¶ 22. Each app is available for both iOS and Android devices and has a reversed color scheme to further differentiate Upwork's client app from defendants' freelancer app. Dkt. No. 38 at 14; Dkt. No. 38-3 ¶ 13. The "Upwork for Freelancers" app has been downloaded nearly three million times since the app was available via the Apple App Store on January 10, 2019 and the Google Play Store on April 2, 2019. Dkt. No. 38-3 ¶ 21. **Plaintiffs do not object to defendants' use of the term "Upwork for Freelancers" because plaintiffs consider the title to be a "referential" phrase**. Dkt. No. 43 at 13 (Reply).

Once downloaded to a device, defendants' app titled "Upwork for Freelancers" provides its

4

1   display name, listed beneath the app's "Up" logo icon, as "Freelancer" on iOS devices and as
2   "Freelancer-Upwork" on Android devices.  Dkt. No. 38 at 14; Dkt. No. 38-3 ¶ 26.  ***This*** is what
3   plaintiffs object to and allege these titles infringe plaintiffs' mark (see below for images showing
4   how Upwork's apps appear after being downloaded).  Dkt. No. 43 at 13.  Plaintiffs also object to
5   defendants sending defendants' users approximately one to two app notifications per day, as these
6   notifications allegedly incorporate the "Freelancer" mark.  Dkt. No. 7 at 24.

7   Plaintiff Freelancer Intl offers the "Freelancer – Hire & Find Jobs" app for iOS and Android
8   devices and holds a license from Freelancer Tech to use the "FREELANCER" mark.  Dkt. No. 8 ¶¶
9   12-13 (Barrie Decl.).  When plaintiffs' app is downloaded to an iOS or Android device, the app's
10  display name is listed as "Freelancer" beneath its company's logo.  Dkt. No. 1 ¶ 44.  A visual
11  comparison of **the post downloaded apps** is provided below for plaintiffs (left) and defendants
12  (right) (as shown on iOS devices (left grouping) and various Android devices (right grouping)):

 

17  Dkt. No. 7 at 13; Dkt. No. 49 at 4.

18  Plaintiffs allege numerous instances of defendants' illegal use of the "FREELANCER" word
19  mark.  Dkt. No. 7 at 13-15 (Mot.).  Specifically, plaintiffs claim the goods and services at issue
20  include (1) computer software for personal information management, (2) computer software for
21  accessing, browsing and searching online databases, (3) electronic payment services, (4) dispute
22  resolution services, and (5) identification verification services.  Dkt. No. 43 at 5.

23  Defendants argue they use "freelancer" as a generic term and "[i]t is obvious to any
24  reasonable user throughout the app store download, install, and use process that they are dealing
25  with Upwork."  Dkt. No. 38 at 9, 14.

**LEGAL STANDARD**

28  Federal Rule of Civil Procedure 65 governs the issuance of preliminary injunctions.  To

1   obtain a preliminary injunction, a plaintiff "must establish [1] that he is likely to succeed on the
2   merits, [2] that he is likely to suffer irreparable harm in the absence of preliminary relief, [3] that
3   the balance of equities tips in his favor, and [4] that an injunction is in the public interest." *Winter*
4   *v. Natural Res. Def. Council*, 555 U.S. 7, 20, 129 S. Ct. 365, 172 L. Ed. 2d 249 (2008) (citations
5   omitted). Courts have also applied an alternative "sliding scale" or "serious questions" test,
6   requiring the plaintiff raise "serious questions going to the merits" and show that "the balance of
7   hardships tip[s] sharply in plaintiff's favor." *See Alliance for the Wild Rockies v. Cottrell*, 632 F.3d
8   1127, 1131-32 (9th Cir. 2011); *id.* at 1135 (stating plaintiff must also show a "likelihood of
9   irreparable injury and that the injunction is in the public interest."). The sliding scale approach
10  allows courts to balance the factors, offering flexibility where, for example, the plaintiff makes a
11  weaker showing of likelihood of success, but a strong showing of irreparable harm. *Id.* at 1131.
12  Regardless of the approach, a preliminary injunction is an "extraordinary remedy that may only be
13  awarded upon a clear showing that the plaintiff is entitled to such relief." *Winter*, 555 U.S. at 22;
14  *see also Earth Island Inst. v. Carlton*, 626 F.3d 462, 469 (9th Cir. 2010) (plaintiffs "face a difficult
15  task in proving that they are entitled to this 'extraordinary remedy[.]'").

16  A preliminary injunction "should not be granted unless the movant, *by a clear showing*,
17  carries the burden of persuasion." *Mazurek v. Armstrong*, 520 U.S. 968, 972 (1997) (citation
18  omitted) (emphasis in original). However, "[d]ue to the urgency of obtaining a preliminary
19  injunction at a point when there has been limited factual development, the rules of evidence do not
20  apply strictly to preliminary injunction proceedings." *Herb Reed Enters., LLC v. Fla. Entm't Mgmt.,*
21  *Inc.*, 736 F.3d 1239, 1250 n.5 (9th Cir. 2013) (internal citation omitted).

**DISCUSSION**

Plaintiffs request a preliminary injunction restraining defendants from (1) distributing software identified in any manner using the FREELANCER mark, (2) servicing the distributed software identified in any manner using the FREELANCER mark, and (3) identifying user accounts using the FREELANCER mark for any accounts through which users access any of the goods or

services that appear on the FREELANCER registration certificate.[5] Dkt. No. 43-1 at 3 (Am. Proposed Order). Plaintiffs further clarify they are not seeking a preliminary injunction to "prohibit uses of the word 'freelancer' on [d]efendants' website to identify workers . . . [or to] prohibit referential uses of the word such as in 'Upwork for freelancers' wherein the term is being used to identify workers for whom the goods or services are intended" and are not asking for the preliminary injunction to take effect until five days after the order is entered in the docket. *Id.*

Defendants argue plaintiffs have not adequately established the requirements necessary for a preliminary injunction. Dkt. No. 38 at 16 (Oppo.). Further, defendants argue plaintiffs' lawsuit will fail because defendants' alleged use of the word "freelancer" is legal. Dkt. No. 45 at 2 (Obj.).

**I.  Likelihood of Success on the Merits**

**A.  Elements of Trademark Infringement & Counterfeiting Causes of Action**

Plaintiffs assert claims for federal trademark infringement and counterfeiting, in violation of the Lanham Act, 15 U.S.C. §§ 1114(1)(a) and (b) (claims 1-2). Dkt. No. 1 ¶¶ 42-90 (Compl.). Plaintiffs also assert California common law trademark infringement and unfair competition (claims 4-6). Dkt. No. 1 ¶¶ 96-111. To prove trademark infringement, plaintiffs must show (1) priority use of a valid, protectable trademark, and (2) that defendants' use of the mark is likely to cause confusion. *See, e.g., Chance v. Pac Tel Teletrac, Inc.*, 242 F.3d 1151, 1156 (9th Cir. 2001) (priority); *Applied Info. Sciences Corp. v. eBay, Inc.*, 511 F.3d 966, 969 (9th Cir. 2007) (validity and likelihood of confusion).

Plaintiffs also allege federal trademark and trade name infringement and unfair competition, in violation of the Lanham Act, 15 U.S.C. § 1125(a) (claims 2-3, 7). Dkt. No. 1 ¶¶ 71-95, 112-118. "To be liable for trademark infringement under § 1125(a), a person must (1) use in commerce (2) any word, false designation of origin, false or misleading description, or representation of fact, which (3) is likely to cause confusion or misrepresents the characteristics of his or another person's goods or services." *Freecycle Network, Inc. v. Oey*, 505 F.3d 898, 902 (9th Cir. 2007).

---

[5] *See* Dkt. No. 1-1 (Ex. 1) ("FREELANCER" registration certificate).

As for counterfeiting, "[a] 'counterfeit' is a spurious mark which is identical with, or substantially indistinguishable from, a registered mark." Lanham Act Section 45, 15 U.S.C. §1127; *see also* Lanham Act Section 34(d), 15 U.S.C. §1116(d) (civil actions from use of counterfeit marks). "Section 1116(d) requires that the mark . . . be (1) a non-genuine mark identical to the registered, genuine mark of another, where (2) the genuine mark was registered for use on the same goods to which the infringer applied the mark." *Louis Vuitton Malletier, S.A. v. Akanoc Solutions, Inc.*, 658 F.3d 936, 946 (9th Cir. 2011). [6]

Plaintiffs assert they are likely to succeed on the merits because plaintiff Freelancer Tech holds the FREELANCER mark for goods and services, and defendants allegedly counterfeit the "freelancer" word mark.[7] Plaintiffs further argue that defendants' alleged counterfeit of plaintiffs' mark establishes the necessary likelihood of confusion element required to prove trademark infringement. Dkt. No. 7 at 21, 23 (Mot.). The Court is not persuaded by this argument because of the Ninth Circuit's recent decision, *Arcona, Inc. v. Farmacy Beauty, Ltd. Liab. Co.*, No. 19-55586, 2020 U.S. App. LEXIS 31203 (9th Cir. Oct. 1, 2020) (declining to presume confusion on a counterfeiting claim because the two products, when viewed in their entirety, were not identical even though both products used the trademarked term "EYE DEW").

Defendants argue plaintiffs fail to establish a likelihood of success for six reasons; the Court focuses on defendants' fair use defense. Dkt. No. 38 at 16 (Oppo.).

### B.     Defendants' Fair Use of "Freelancer"

Defendants raise 15 U.S.C. § 1115(b)(4), an affirmative defense to trademark infringement of an incontestable mark. The fair use defense is applicable in instances where defendants' alleged infringing use of plaintiff's mark "is a use, otherwise than as a mark . . . of a term or device which

---

[6] Plaintiffs' remaining causes of action (claims 8-10), tortious interference with prospective economic advantage, California Anti-Phishing Act, and California false advertising causes of action, are not addressed by either plaintiffs or defendants and appear to be dependent on a finding of unlawful conduct by defendants through either trademark infringement or counterfeiting. Dkt. No. 1 ¶¶ 119-148.

[7] *See* Dkt. No. 1-1 (Ex. 1) ("FREELANCER" registration certificate).

8

1  is descriptive of and used fairly and in good faith only to describe the goods or services of such
2  party, or their geographic origin." 15 U.S.C. § 1115(b)(4).  To prevail on a fair use defense, the
3  alleged infringer "is not required to 'negate confusion.'" *Fortune Dynamic, Inc. v. Victoria's Secret
4  Stores Brand Mgmt.*, 618 F.3d 1025, 1039 (9th Cir. 2010) (quoting *KP Permanent Make-Up, Inc. v.
5  Lasting Impression I, Inc.*, 543 U.S. 111, 114 (2004)).

6  Defendants offer three reasons why a fair use defense prevails.  First, defendants argue they
7  use the plain meaning of the word "freelancer" on their app display names and elsewhere to describe
8  the appropriate users: freelancers.  Dkt No. 38 at 18.  Defendants further argue they use the word
9  "freelancer" in good faith because they trade on Upwork's "own considerable goodwill" and have
10 not sought to trademark the words "Freelance" or "Freelancers." *Id.* at 19.  Finally, defendants
11 argue they use the word "freelancer" "otherwise than as a mark" and rely on defendants' own
12 Upwork trademark. *Id.* at 18-19.

13 Defendant cite to *Pinterest, Inc. v. Pintrips, Inc.*, 140 F. Supp. 3d 997 (N.D. Cal. 2015).  In
14 *Pinterest*, the Court found defendant's "use of the word pin is used to describe the common act of
15 pining — i.e., one of the services offered by the Pintrips website — and not to identify, distinguish,
16 or indicate the source of those goods or services." *Pinterest*, 140 F. Supp. 3d at 1024.  The Court
17 based this reasoning in part on ample evidence of "the terms pin and pinning hav[ing] concrete and
18 well-known meanings in both the computing field generally and the social media field specifically."
19 *Pinterest, Inc.*, 140 F. Supp. 3d at 1024.  Here, defendants submitted evidence showing (1)
20 defendants use the word "freelancer" to describe their users (Dkt. No. 38 at 14-15, 18-19), and (2)
21 the word "freelancer" is well-known and defined as "someone who is not permanently employed by
22 a particular company, but sells their services to more than one company" (Dkt. No. 38-2 (Ex. 1)).

23 Plaintiffs do not offer a persuasive refutation of defendants' fair use argument, dismissing
24 the fair use defense as inapplicable because plaintiffs do not challenge defendants' use of the word
25 "Freelancer" where it is not used "as a mark." Dkt. No. 43 at 8.  "To determine whether a term is
26 being used as a mark, we look for indications that the term is being used to 'associate it with a
27 manufacturer.'" *Fortune Dynamic*, 618 F.3d at 1040 (quoting *Sierra On-Line, Inc. v. Phoenix
28 Software, Inc.*, 739 F.2d 1415, 1423 (9th Cir. 1984)).

> The Ninth Circuit has identified at least two factors that indicate whether a term is being used as a trademark: (1) "whether the term is used as a symbol to attract public attention, which can be demonstrated by the lettering, type style, size and visual placement and prominence of the challenged words"; and (2) "whether the allegedly infringing user undertook precautionary measures such as labeling or other devices designed to minimize the risk that the term will be understood in its trademark sense."

*Pinterest*, 140 F. Supp. 3d at 1024 (internal quotation marks and citations omitted). The Court is unpersuaded that Upwork is using "Freelancer" as a trademark.[8]

Plaintiffs' primary arguments regarding Upwork's use of "Freelancer" as a mark concern (1) defendants' app display names: "Freelancer" on iOS devices and "Freelancer-Upwork" on Android devices (Dkt. No. 7 at 7, 13; Dkt. No. 43 at 13); (2) when defendants' app states "This is a Freelancer account" instead of for example "This is an Upwork account for freelancers" (Dkt. No. 7 at 8, 14; Dkt. No. 43 at 9, 13); and (3) when defendants' software prompts the user that "'Freelancer' Would Like to Send You Notifications" (Dkt. No. 7 at 7-8); and (4) a document that encouraged defendants' freelancers on the Upwork app to migrate to Upwork's new app meant for freelancers (Dkt. No. 44 ¶ 60 (Oliver Suppl. Decl.); Dkt. No. 44-1 (Ex. 53)[9]). Plaintiffs further argue defendants use "Freelancer" as a mark because the word is capitalized in certain instances. Dkt No. 7 at 8; Dkt. No. 43 at 9, 43.

None of plaintiffs' arguments is availing. The instances in which Upwork allegedly uses "Freelancer" as a mark are proper and descriptive uses of a common word distinguishing Upwork's freelancer app from its client app – mirroring a portion of the dispute in the *Pinterest* case discussed above. The Court is not persuaded that bold font and a capital letter are sufficient to show defendants use "Freelancer" as a mark versus a descriptive term – especially when Upwork's distinctive lime green logo or coloring is placed directly alongside the various notifications. Defendants do not list

---

[8] During the October 16 hearing, plaintiffs' council argued that other app display names such as Nike and Yelp were comparable examples to defendants' "Freelancer" app on iOS devices. Such examples are inapposite as neither Nike nor Yelp is a descriptive word referring to a type of app user. Rather, defendants argue Upwork's apps use the word "freelancer" to describe defendants' users, as evidenced from having a "Freelancer" app for freelancers and a "Client" app for clients. Dkt. No. 38 at 14, 19-20. The Court agrees with defendants.

[9] Defendants object to Dkt. No. 44-1 and other documents submitted with plaintiffs' reply brief, alleging the evidence submitted is irrelevant and untimely. *See* Dkt. No. 45 at 4-6 (Obj.). Defendants' objections are overruled. While the documents submitted did not persuade the Court to grant plaintiff's motion for a preliminary injunction, they are not irrelevant. Further, the Court notes it granted *defendants'* request to submit a sur-reply. *See* Dkt. No. 46 (Order).

1  the word "Freelancer" among defendants' own publicly listed trademarks, nor do defendants
2  implement a stylized font or "TM" symbol when using the word "Freelancer."  Dkt. No. 38 at 19-
3  20.

4  Based on the current record, the Court finds defendants do not use "freelancer" as a mark,
5  rather, defendants use the word in good faith to describe its users.  For these reasons, the Court
6  agrees defendants' use of the word "freelancer" satisfies the requirements of fair use under 15 U.S.C.
7  § 1115(b)(4).  As such, plaintiffs are not likely to succeed on the merits for their federal trademark
8  infringement cause of action or their remaining causes of action (claims 1, 3-10).[10]

## II. Irreparable Harm

Even if plaintiffs could establish a likelihood of success on the merits, they have not established they are likely to suffer irreparable harm – the next element of the preliminary injunction inquiry.  *Winter v. Natural Resources Defense Council*, 555 U.S. 7, 20, 129 S. Ct. 365, 172 L. Ed. 2d 249 (2008).  Specifically, plaintiffs must establish that "remedies available at law, such as monetary damages, are inadequate to compensate for that injury."  *BoomerangIt, Inc. v. ID Armor, Inc.*, 2012 U.S. Dist. LEXIS 86382, at *11 (N.D. Cal. June 21, 2012).

Plaintiffs' allege they suffer irreparable harm because they have lost and will continue to lose business reputation and goodwill.  "Plaintiffs estimate that up to as many as 1,800 users per day or 56,000 users per month are diverted into [d]efendants' business and away from [p]laintiffs' business."  Dkt. No. 7 at 25 (Mot.).  While loss of goodwill and loss of prospective customers may support a finding of the possibility of irreparable harm,[11] plaintiffs have presented no evidence of actual losses.  The Court is unpersuaded that losses are likely to occur simply because the apps' display names -- "Freelancer" on iOS devices and as "Freelancer-Upwork" on Android devices --

---

[10] Without determining the specific level of similarity between the "Freelancer" apps, the Court concludes that plaintiffs are unlikely to succeed on their counterfeiting cause of action upon viewing the apps in their entirety.

[11] *See Stuhlbarg Int'l Sales Co. v. John D. Brush & Co.*, 240 F.3d 832, 841 (9th Cir. 2001) (finding "[e]vidence of threatened loss of prospective customers or goodwill certainly supports a finding of the possibility of irreparable harm").

11

include the word "Freelancer." This is especially true where the apps have such distinctively different logos. Additionally, the disputed titles only become apparent *after* a user makes a conscious decision to download the apps. Dkt. No. 38 at 14; Dkt. No. 38-3 ¶ 26. Further, plaintiffs do not object to the app titles as they appear in the app stores, before a consumer elects to download the app(s). Dkt. No. 38 at 14; Dkt. No. 38-3 ¶ 26; Dkt. No. 43 at 13.

The Court is equally unpersuaded by plaintiffs' arguments of irreparable harm regarding the app notifications defendants send to their own users. Dkt. No. 7 at 24. It is unlikely these users are confused on the source of these notifications because the notifications only appear once the users make the conscious decision to download the app and register with Upwork. Dkt. No. 38 at 28. Finally, the Court does not consider it likely that plaintiffs will be harmed from users downloading or reviewing defendants' "Upwork for Freelancers" apps, when plaintiffs do not object to how defendants' app titles appear in the app stores. Dkt. No. 43 at 13.

For these reasons, plaintiffs' alleged harm is unsupported by evidence and is highly speculative.

## CONCLUSION[12]

For the foregoing reasons and for good cause shown, the Court hereby DENIES plaintiffs' motion for a preliminary injunction.

Further, on October 22, 2020, defendants filed an administrative motion requesting a twenty-one (21) day extension to respond to plaintiffs' complaint, anticipating filing a motion to dismiss and seeking additional time to meet and confer with plaintiffs to hopefully narrow the issues. Dkt. No. 1 (Compl.); Dkt. No. 52 (Administrative Mot.). Plaintiffs "reluctantly agree[d] to an additional

---

[12] On October 21, 2020, plaintiffs submitted an administrative request for permission to file a sur-sur-reply, complaining they were "foreclosed at the hearing [from making various arguments] when the Court suddenly stated that it had to adjourn for a different hearing in mid-argument." Dkt. No. 51 at 2. The Court grants plaintiffs' request and considered the sur-sur reply (Dkt. No. 51-1) in issuing the instant order. However, plaintiffs should note: (1) the parties were granted *an hour* to address issues on a straightforward preliminary injunction motion, during which plaintiffs spoke more than defendants, and (2) the Court's publicly available schedule made clear the criminal calendar begins at 11 a.m.

seven (7) day extension of time to respond to the complaint (which amounts to a total of 58 days to respond from service)." Dkt. No 52-2 (Ex. A).  The Court hereby GRANTS defendants' motion. **Defendants' responsive pleading shall be filed on or before November 13, 2020.**

**IT IS SO ORDERED**.

Dated: October 23, 2020

_____
SUSAN ILLSTON
United States District Judge